## Terminal Railroad Association of St. Louis v. Thomas J. Condon, Administrator.

1. PECUNIARY LOSS—*when sufficiently established in action for death caused by alleged wrongful act.* Where the next of kin are collateral, but are shown to have received financial benefit from the intestate, pecuniary loss is *prima facie* established, and the amount of the damages to be awarded is largely left to the discretion of the jury.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the February term, 1906. Affirmed. Opinion filed September 14, 1906.

J. M. HAMILL, for appellant.

J. H. McMURDA and KEEFE & SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit under the statute by appellee, as administrator of the estate of John Horrigan, deceased, for the benefit of the next of kin. The death of Horrigan is claimed to have been caused by the negligence of appellant's servants in the running and management of one of its trains over a public crossing in St. Clair county, which deceased was attempting to cross.

The declaration charged failure on the part of appellant to observe the statutory duty of ringing the bell or blowing the whistle, on approaching the cross-

ing; the running of the train at a greater rate of speed than that permitted by the city ordinances, and the omission of the common law duty to give warning or signal of the approach of the train, towards the crossing.

John Horrigan, as shown by the proofs, lived at Springfield, Illinois, and went to the World's Fair at St. Louis on November 26, 1904, in company with a friend named Watson. In the evening of that day, they crossed the river to East St. Louis and took a street car, on their way to Granite City, running in a northwesterly direction, to what is known as Black bridge, where the line on which they were riding terminated. About half a block from this point was another _car line which deceased and his friend intended to take to carry them to their destination. Between the points where they left the car, which was on St. Clair avenue, and the line they proposed to take, there are six or eight railroad tracks, extending in a northerly and southerly direction, across and at right angles to St. Clair avenue. The first two tracks were operated by what was known as the Conlogue Railroad Company and the remainder by appellant. As they passed over the first two tracks and reached appellant's first track, they found a freight train upon it and quite a number of persons waiting for the train to move so that they could cross over. It was about eight o'clock in the evening and very dark. No light was provided at the crossing, and the darkness and confusion were added to by several engines at or near the crossing, emitting smoke and steam. The freight train was headed north, but when it moved it was backed south across the street. Immediately after the engine cleared the way, deceased and some others attempted to cross the track. Some of the persons cleared the second track and escaped injury, but as deceased reached the second track, he was struck by an engine, pulling a number of cars north across the

crossing, and killed. The engine pulling the cars was proceeding with the tender in front and its head attached to the cars it was pulling. There was no headlight on the tender and the headlight upon the engine was towards the south, next to a box car. The train was running at a speed estimated at twelve miles or more an hour, and no bell was rung or whistle sounded as the locomotive approached the crossing.

No evidence was introduced on the part of appellant at the trial, and the proofs clearly show that appellant was guilty of a high degree of negligence, and the deceased was at the time he was injured in the exercise of ordinary care for his own safety.

At the close of the testimony, appellant moved the court to peremptorily instruct the jury to find the defendant not guilty, and when this instruction was refused, counsel stated that appellant demurred to the evidence, and as soon as the evidence was written out, would file the demurrer, and asked that the jury be discharged from further consideration of the case. The court, however, refused to discharge the jury, and proceeded to cause damages to be assessed, counsel for appellant refusing to argue the cause. The jury returned a verdict for $4,500, but appellee entered a *remittitur* for all in excess of $1,000, and judgment was entered against appellant for that amount. Later counsel for appellant filed a demurrer to the evidence, which was overruled.

The right of plaintiff to recover in this case was clear, and the only practical question arising is that which concerns the amount of the judgment. It is contended by appellant that in no event could more than nominal damages be recovered in this suit, because deceased's next of kin were collateral kindred and were not in the habit of claiming or receiving assistance from him. The only person who testified upon that subject was James Horrigan, a brother of the deceased. It appeared from his testimony that deceased, who

was a plumber and steam fitter and worked at his trade in Springfield, had a brother, the witness, and three sisters; that deceased was liberal to witness and helped him when he needed it; that deceased had given money to witness; that one of the sisters, Mrs. O'Connell, was quite an old woman and a widow; that she was too old to do anything much and received support, the extent not being shown, from her daughters; that deceased gave to her liberally; that he sent her money to live on and bought provisions for the house; that witness had seen her get the checks for money from deceased; that witness knew of him contributing to her about two months before his death; that he had sent her as much as $50 at a time. His testimony upon this subject concerning the other sisters is not clear, and it is not certain that they received assistance from the deceased.

We are of opinion that it clearly appears from the evidence that the sister, Mrs. O'Connell, if not the other next of kin mentioned, was accustomed to receive support and assistance to a considerable extent from deceased, and that she has suffered a pecuniary loss in his death. The amount of that loss was difficult of determination and must necessarily be largely left to the discretion of the jury.

In C. & A. R. R. Co. v. Shannon, 43 Ill. 336, it is said: "If the next of kin have been dependent on the deceased for support in whole or in part, it is immaterial how remote the relationship may be. There has been a pecuniary loss for which compensation under the statute must be given * * *. How this pecuniary damage is to be measured—in other words what is to be the amount of the verdict, must be largely left (within the limits of the statute) to the discretion of the jury * * *. What the life of one person is worth, in a pecuniary sense, to another, is a question incapable from its nature, of exact determination."

The doctrine laid down by this case has been firmly

Terminal R. R. Ass'n v. Condon.

established in this state.   As appellee was entitled to recover more than nominal damages, and as it is impossible to determine the exact amount of the pecuniary loss, we are content to leave the amount as fixed in the judgment by the trial court.

The judgment of the court below will be affirmed

*Affirmed.*